```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

|  |  |
|---|---|
| ALFONSO PERCY PEW, | Civil Action No. 03-1728 |
| Plaintiff | Judge Donetta Ambrose/ Magistrate Judge Lisa Lenihan |
| vs. |  |
| JOANNE TORMA, et al., |  |
| Defendants | Re: Doc. No. 77 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that Defendants' motion to for partial summary judgment be granted.

### II.   REPORT

This case was the subject of a previous report and recommendation that recommended all but two of Plaintiff's claims be dismissed. The two remaining claims are: 1) an interference with religious rights claim under the First Amendment, the Equal Protection Clause and under the Religious Land Use and Institutionalized Persons Act and 2) an Eighth Amendment claim that Plaintiff was denied pork substitutes in meals rendering them nutritionally inadequate. This court suggested in an earlier report, Doc. 73 at 19, that the Defendants file the instant partial summary judgment motion and raise the issue that Plaintiff's Eighth Amendment pork substitute claim was not exhausted under the Prison Litigation Reform Act ("PLRA"). The

Defendants had raised this issue in a motion to dismiss but the court found it was not susceptible to resolution in that procedural posture. Because Plaintiff did not exhaust his administrative remedies with respect to the Eighth Amendment claim, he has procedurally defaulted that claim and the Defendants are entitled to summary judgment.

**A.     Relevant Facts and Procedural History**

The facts and procedural history are recounted in greater detail in earlier reports and recommendations and will not be repeated here. See Doc. Nos. 71 and 73. Suffice it to say that the Defendants filed the instant partial motion for summary judgment along with an affidavit and a brief. Doc. 77. The affidavit is from Tshanna Kyler, Grievance Review Officer for the Department of Corrections, in charge of grievance appeal records. Doc. 77, Attachment A at ¶ 1. She attested that Plaintiff did not exhaust his administrative remedies because he failed to file a final review third level appeal. Id. at ¶ 5. Plaintiff filed a response and affidavit. Doc. 80.

**B.     Applicable Legal Standards**

Summary judgment may be granted against a party who fails to adduce evidence of facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial

burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  <u>Walters ex rel. Walters v. General Motors Corp.</u>, 209 F.Supp.2d 481, 484 (W.D. Pa. 2002).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a <u>genuine issue for trial</u> . . ." or the factual record will be taken as presented by the moving party and judgment will be entered against the non-movant.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The non-moving party may not rest upon mere denials of the facts identified by the movant, nor upon the vague and amorphous argument that the record somewhere contains facts sufficient to support its claims. <u>Childers v. Joseph</u>, 842 F.2d 689 (3d Cir. 1987).  Neither may the non-moving party simply substitute the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).  Instead, the non-moving party must point to where in the summary judgment record there is evidence that creates a genuine issue of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>.  When disposing of a motion for summary judgment, in addition to the evidence the parties present, a court may consider facts of which it can take judicial notice.  <u>United States v. Weber</u>, 396 F.2d 381, 386, n.10 (3d Cir. 1968) ("This Circuit has taken the position that under F.R.Civ.P. 56 a court may take judicial notice of its own public records

3

containing sworn testimony, affidavits and similar material described in F.R.Civ.P. 56(c).").

C. **Discussion**

In his supplemental complaint, Doc. 22, Plaintiff alleged that Defendants Beard, Stickman and Culp, along with Defendants James Meta and Nixon have caused Plaintiff cruel and unusual punishment while he was housed in the Restricted Housing Unit ("RHU") because when pork products were served for meals, the Defendants refused to give the peanut butter substitute or any substitute for people like Plaintiff, who, for religious reasons, cannot eat pork.  Id. ¶¶ 13-14.[1]  In their motion for partial summary judgment, the Defendants note that the grievance which Plaintiff filed with respect to this claim was grievance No. 64250, dated October 7, 2003.  Doc. 77, Attachment B.  In that grievance, Plaintiff complains that he is "grieving the D.O.C. policy that has stopped peanut butter or any substitute for pork which is served regularly each week."  Id.  The only person mentioned in the grievance is James Meta.

The Defendants argue that pursuant to Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), Plaintiff has procedurally

---

[1] The court notes that Plaintiff appears to invoke the Eighth Amendment as a basis for this claim, and not the First Amendment.  His theory appears to be that because no pork substitute is given, he is thereby denied adequate nutrition.  Plaintiff does not appear to be making a First Amendment claim here.

defaulted his claims against those Defendants who were not named in the grievance. The Defendants are correct.

Pursuant to 42 U.S.C. § 1997(e)(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The pertinent Pennsylvania Department of Corrections ("DOC") policy establishing what administrative remedies are available to prisoners in DOC institutions was promulgated in DC-ADM 804.

The Court of Appeals has declared that DC-ADM 804 requires that the prisoner name individuals in the grievance that he eventually sues in court in order to exhaust under the PLRA. In Spruill, the Court of Appeals was confronted with a situation where, although the Pennsylvania prisoner had filed a grievance, the grievance failed to mention one of the people whom the prisoner subsequently named as a defendant in a civil rights action based on the same events as the grievance. The Court held that because the grievance did not mention the particular individual by the name of Brown, the prisoner-plaintiff had procedurally defaulted his claims against Brown. The holding of Spruill, in this respect is right on point:

> [t]he passage quoted above regarding the contents of
> the grievance is also the only section of the Grievance

> System Policy requiring that the grievance identify
> specific persons. On this matter, the text is
> mandatory, or nearly so: "The inmate shall include a
> statement of the facts relevant to the claim.... The
> inmate should identify any persons who may have
> information that could be helpful in resolving the
> grievance. The inmate should also include information
> on attempts to resolve the matter informally." DC-ADM
> 804, Part VI.A.1.d. To the extent that Brown's identity
> is a "fact[ ] relevant to the claim"-and it is-it was
> mandatory for Spruill to include it. To the extent that
> Brown was a "person[ ] who may have information" or
> someone with whom Spruill made "attempts to resolve the
> matter informally"-and he was-Spruill was required to
> identify Brown if practicable. Spruill did not, and has
> offered no explanation for his failure to do so. Any
> grievance against Brown would now be time-barred. See
> DC-ADM 804, Part VI.A.1.e ("Grievances must be
> submitted by the inmate ... within fifteen (15) working
> days after the events on which the claims are based.").
> Thus Spruill has procedurally defaulted a claim against
> Brown by failing to identify him.

Spruill, 372 F.3d at 234.

Instantly, the Defendants have pointed to evidence showing that Plaintiff did not even mention Defendants Beard, Stickman, Culp, or Nixon in his first level grievance.  Doc. 77, Attachment B (first level grievance filed by Plaintiff and assigned Number 64250).  Accordingly, Defendants have carried their summary judgment burden to produce evidence to show Plaintiff has failed to exhaust as to these Defendants.  Ray v. Kertes, 285 F.3d 287, 293 n. 5 (3d Cir. 2002)(exhaustion is an affirmative defense which means defendants have burden of proof to establish non-exhaustion).  Plaintiff has failed to point to any evidence to the contrary.  See, e.g., Robinson v. Johnson, 313 F.3d 128, 134-135 (3d Cir. 2002) ("The purpose of requiring the defendant to

plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed.").

The only argument Plaintiff makes in response is that he filed Grievance 64250, which challenged a DOC policy and the "policy itself automatically includes the implementers of it at the prison and administrative office."  Doc. 80 at p. 5 ¶ 3.

Hence, Plaintiff does not attempt to challenge the fact that he failed to name the other defendants.  Rather, he is arguing the legal significance of not doing so.  Plaintiff is arguing for the legal rule that where a prisoner is challenging a DOC policy he need not name anyone, because to challenge a DOC policy automatically includes all of the implementers of that policy. Plaintiff cites no authority for such a proposition.  In fact, to the extent that there is controlling authority addressing this issue, the authority is to the contrary.  Spruill made clear that what exhaustion is to be measured against is the State rules that impose the system of administrative remedies.  Spruill, 372 F.3d at 231 ("there simply is no express federal law describing the procedural requirements with which prisoners must comply in satisfying § 1997e(a)'s exhaustion requirement.  As between crafting judge-made law on this subject and looking to state prison grievance procedures, the latter will far better serve the

policy interests of the PLRA."). After <u>Spruill</u>, we know that the DOC rules require the prisoner to "identify any persons who may have information that could be helpful in resolving the grievance." Notwithstanding Plaintiff's claim that he was challenging a policy, he was required pursuant to DOC regulations and the spirit, if not the holding of <u>Spruill</u>, to identify the other defendants he has named in this particular claim. <u>See</u>, e.g., <u>Williams v. Pennsylvania, Dep't of Corrections</u>, __ Fed.Appx. __, 2005 WL 1950801, *3 (3d Cir. Aug. 16, 2005)("his failure to identify defendants Herbert, Street, or Smith in either of his two grievances, means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA."). Because he did not, he has not exhausted his claims against these Defendants.

Moreover, because the time for filing any grievances against Defendants Beard, Stickman, Culp, or Nixon has long passed,[2] the

---

[2] DOC policy establishes that "grievances must be submitted by the inmate for Initial Review to the Facility Grievance Coordinator within 15 working days after the event upon which the claim is based." DC-ADM 804 § VI.A.8 available at

http://www.cor.state.pa.us/standards/lib/standards/DC-ADM_804_Inmate_Grievances.pdf

It appears that this has been the policy since at least 1994 up to and including the present. <u>See</u> <u>Davis v. Warman</u>, 49 Fed.Appx. 365 (3d Cir. 2002)("*See* Commonwealth of Pennsylvania, Department of Corrections, Consolidated Inmate Grievance Review System, Policy No. DC-ADM 804 § VI.B.2. (Oct. 20, 1994) ('Grievances must be submitted for initial review ... within fifteen (15) days after the events upon which the claims are based.')").

failure to exhaust his administrative remedies must be treated as a procedural default.  See, e.g., Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004)(declaring that failure to abide by DOC's internal grievance procedures may result in procedurally defaulting a civil rights claim in federal court, reasoning that "[w]e believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. . . . Congress wanted to erect any barrier it could to suits by prisoners in federal court, and a procedural default rule surely reduces caseloads (even though it may be a blunt instrument for doing so)"); Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)("[t]o exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim .... these include time limits."); Berry v. Kerik, 366 F.3d 85, 86 (2d Cir. 2004)(holding that "in the absence of any justification for not pursuing available remedies, his [i.e., the prisoner's] failure to pursue administrative remedies while they were available precluded his federal lawsuits, and they were properly dismissed with prejudice.") (footnote omitted).

   Accordingly, because Plaintiff has procedurally defaulted his Eighth Amendment claim against all Defendants other than Meta, these Defendants are entitled to summary judgment.

   **A) He procedurally defaulted because he did not appeal**

Defendants also provide evidence that Plaintiff failed to exhaust his claims against all of the Defendants because he did not file the third level appeal. Doc. 77, Attachment A. Nowhere does Plaintiff provide evidence that he filed his third level appeal.

In order for a prisoner-plaintiff to exhaust his administrative remedies within the meaning of Section 1997e(a), he or she must utilize all three levels of the DOC grievance system. See, e.g., Jones v. Maher, 131 Fed.Appx. 813, 815 (3d Cir. 2005); Ahmed v. Sromovski, 103 F.Supp.2d 838, 843 (E.D.Pa. 2000).

Although Plaintiff offers no evidence that he did, in fact file a third level grievance appeal, he does offer several legal arguments as to why he did not have to or why he should be excused from doing so.

First, Plaintiff contends, in his unsworn response, that he had to "deal with" circumstances in the RHU which "removed him from the statutory reach of the exhaustion requirement." Doc. 80 at p. 2, ¶ a. In his affidavit, he notes that there exists a memo from Superintendent Johnson concerning the grievance box on the RHU A-200 unit which allegedly referenced the fact that staff members were destroying grievances placed in the unit box. Critically missing from the affidavit is an assertion from Plaintiff that he, in fact, filed the third level appeal in the

grievance box on A-200.  Hence, there is no evidentiary support for the contention that problems with the grievance box on the A-200 unit rendered the administrative remedies unavailable to Plaintiff as opposed to Plaintiff's failure to even attempt to file.

Plaintiff next argues that because the initial grievance was addressed on the merits by the ultimate administrative authority of the Prison Food Service (apparently meaning thereby, Mr. James Meta, the Kitchen Supervisor at SCI-Pittsburgh),[3] it was not necessary to proceed further.  In support of his contention, he cites Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000).

In Camp, the prisoner alleged the use of excessive force by guards.  He asserted that he tried to file grievances but that his grievance was not processed because he was on grievance restriction and that "many SCI-Albion officers told him that none of his grievances would get to the Grievance Coordinator because the grievances were about the officers' co-workers."  Camp, 219 F.3d at 280.  Although the District Court found that the prisoner had not exhausted his remedies, the Court of Appeals reversed.

Plaintiff has not shown that Camp is controlling in this case.  It is clear that in Camp, the prisoner had written to

---

[3] See Doc. 22, Ex. J; Doc. 80 at p. 2 ¶ b ("because the initial grievance [was] examined [on] the merits by the ultimate administrative authority of the Prison Food Service[,] it was not necessary to get the same results" from the second and third level appeals).

DOC's Office of Professional Responsibility which forwarded his complaint to the Office of the Secretary of DOC.  The DOC Secretary sent a letter to the prisoner saying his allegations were fully investigated and found not credible and that the corrections officers' actions were justified.  Consequently, the court in Camp, stated the following:

> we are told by defendants themselves that Camp's allegations have been fully examined on the merits by the ultimate administrative authority and have been found wanting. With that substantive determination having already been made at the highest level, there would be even more reason to invoke the Joseph Heller metaphor to describe any notion that Camp must jump through any further administrative hoops to get the same answer.

219 F.3d at 281.  The principle to be drawn from the passage is apparently that where the ultimate administrative authority examines a prisoner complaint on the merits and finds the complaint meritless, it would be unnecessary to make a prisoner go back and attempt to exhaust.[4]

---

[4] More recently, the Court of Appeals appears to have construed the holding of Camp to mean that where the ultimate administrative authority does not require strict compliance with their internal grievance procedure and addresses the prisoner's complaint on the merits, the prison authorities have waived the exhaustion requirement.  See, e.g., Casey v. Smith, 71 Fed.Appx. 916, 918 (3d Cir. 2003).  In Casey, the court noted that

> Although we have found that exhaustion can be waived if the ultimate administrative authority fully examines the grievance on the merits, *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir.2000), Casey cannot escape the fact that his grievance was determined to be untimely in the final administrative stage. As we look to the decision of the ultimate administrative authority, here, Chief

Plaintiff attempts to analogize his case to Camp. He seems to suggest that his initial grievance was addressed by the ultimate administrative authority and he points to the Prison Food Service as being the ultimate administrative authority, apparently meaning thereby, Mr. Meta. However, in fact, this particular grievance, i.e., No. 64250 was not addressed by the ultimate authority, it was rejected by Carol Scire as being previously presented and apparently, previously addressed by Mr. Meta. Doc. 22, Exs. H & I. Moreover, contrary to his stated position in response to the summary judgment motion, i.e. that the ultimate administrative authority addressed the grievance, Plaintiff alleged in his supplemental complaint the exact opposite. He alleged that "RESPONDENTS META, STICKMAN, BEARD, CULP AND NIXON WOULD NOT ADDRESS THE GRIEVANCE RAISING UNSANITARY AND INHUMANE FOOD SERVICE IN CONDITION OF CONFINEMENT. SEE MARKED EXHIBIT ATTACHED I DATED 10-9-03 NO. 64520." Doc. 22 at ¶ 14.

Even if the court were to ignore Plaintiff's contrary allegation in his supplemental complaint, and even if it were proper for the court to consider his previously filed grievance, which apparently was addressed on the merits by Mr. Meta,

---

Hearing Examiner Bitner's determination of untimeliness, *Camp* is inapplicable to Casey's situation and exhaustion has not been waived.

Id.

Petitioner presents no evidence that Mr. Meta is the "ultimate administrative authority" within the meaning of Camp.  Indeed, under the DOC administrative grievance procedure, it would appear that the "ultimate administrative authority" is either the Chief Hearing Examiner or the Secretary of the DOC.  See Casey v. Smith, 71 Fed.Appx. at 918.  Hence, Plaintiff presents no evidence to support a genuine issue of fact with respect to this issue.  Accordingly, he has not adduced evidence that his compliance with the exhaustion requirement should be excused or that DOC's administrative remedies were unavailable to him or were satisfied.

Next, Plaintiff argues that because the Defendants removed this suit to federal court from state court wherein he originally filed the case, they have waived the exhaustion defense because the exhaustion of administrative remedies defense "was not available [to the Defendants] in the state court prior to Defendants['] voluntary removal [on] August 8, 2003."  Doc. 80 at p. 3, ¶ c.  Plaintiff is simply mistaken in his legal contention that the exhaustion of administrative remedies was not a defense available to the Defendants in the state courts at the time they removed this suit.  The defense of failure to exhaust was available to the Defendants just as if Plaintiff had filed this

suit in the federal courts to begin with.  See 42 Pa.C.S.§ 6603.[5]
Hence, the Defendants did not waive the exhaustion requirement by removing this case to this court.

Plaintiff next contends that the DOC Policy 803 denies Plaintiff legal mail past the $10.00 monthly limit.  Plaintiff suggests in his response that this policy rendered the administrative remedies unavailable to him.  The court is reluctant to hold that merely because a prisoner is litigious and uses up all of his allotment for free mailing, the grievance system is rendered unavailable to him because he could not afford to send a third level appeal.  However, even if such a legal principle existed, Plaintiff's argument still fails.  Plaintiff

---

[5]  Section 6603 of the Pennsylvania Prison Litigation Reform Act states:

> 42 Pa.C.S. § 6603 (Limitations on remedies) provides:
>
> (a) Limitations on remedies for Federal claims.--Prison conditions litigation filed in or remanded to a court of this Commonwealth alleging in whole or in part a violation of Federal law shall be subject to any limitations on remedies established by Federal law or Federal courts with respect to the Federal claims.
>
> (b) Limitations on remedies under Pennsylvania law.--Prison conditions litigation arising in whole or in part due to an allegation of a violation of Pennsylvania law shall be subject to the limitations set forth in this act with respect to those claims arising under Pennsylvania law.

has provided no evidence that in the time frame of October - December 2003 he was beyond his $10.00 monthly limit during each of those months at the time he would have had to file his third level appeal. In fact, according to his IFP application in <u>Pew v. Viscusi</u>, No. 03-1755 (W.D. Pa. Doc. 1), of which this court takes judicial notice, Plaintiff, as of October 20, 2003, had not yet used his full $10.00 allotment in postage, and even after he had used up the full allotment as of October 21, 2003, DOC apparently continued to provide him with postage, permitting postage charges of 13.67 to have accumulated by October 31, 2003. Moreover, on October 31, 2003, Plaintiff received a gift of $20.00 from Angela Mealy, causing his account balance to be -$27.54. On November 4, 2003, Plaintiff received another gift of $100.00 from Maggie Pew, causing his account balance to be $72.46. Plaintiff provided no evidence as to when he received a response to his second level appeal which he filed on October 15, 2003. Doc. 22, Ex. L. Depending on when he received his response from the second level appeal officer, he may well have had until the first week of November to file his third level appeal[6] when

---

[6] DOC-ADM VI.D.1.b provides that "Any inmate who is dissatisfied with the disposition of an appeal from the Facility Manager may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within five working days from the date of the Facility Manager's/designee decision." The Court takes judicial notice of the DOC Policy. <u>See</u>, <u>e.g.</u>, <u>Hodges v. Klein</u>, 421 F.Supp. 1224, 1233 (D.N.J. 1976) (court took judicial notice of written prison regulations of New Jersey's Department of Corrections and Parole), <u>aff'd</u>, 562 F.2d 276 (3d Cir. 1977);

his account balance would have permitted him to pay for postage/copies.  In any event, it is not necessary to speculate, given that Plaintiff has produced no evidence that, at the time he would have had to file his third level appeal, he had already utilized his entire $10.00 allotment or that he otherwise had no money to pay for postage/copies.  Accordingly, Plaintiff's legal argument, unsupported by any evidence, does not prevent the grant of summary judgment to Defendants on this claim.

    The same reasoning applies equally to Plaintiff's next argument.  Plaintiff's next argument contends that DOC-ADM 803 denies him the ability to make photo copies after he utilized his $10.00 allotment.  Again, Plaintiff provides no evidence that at the time he was required to make copies of his second level appeal in order to send the copies along with his third level appeal that he had utilized his $10.00 allotment or otherwise was unable to pay for them.  Accordingly, he has produced no evidence to show that the administrative remedy was unavailable to him.

---

Stokes v. Duval, No. 95-10541-GAO, 1995 WL 598958 (D.Mass. Sept. 26, 1995) (court took judicial notice of the regulations of the Massachusetts Department of Corrections).  DOC Policy is available at

    http://www.cor.state.pa.us/standards/lib/standards/DC-ADM_804_Inmate_Grievances.pdf

(Site last visited November 2, 2005).  It is hoped that in the future the Attorney General's Office will attach to their summary judgment motions a copy of the DOC grievance procedure in effect at the relevant time when the Plaintiff would have been required to exhaust.

In light of the foregoing, summary judgment should be granted to all of the Defendants on Plaintiff's Eighth Amendment pork substitute claim.

### III. CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.


       s/ Lisa Pupo Lenihan
       Lisa Pupo Lenihan
       U.S. Magistrate Judge

Dated: November 4, 2005

cc:  The Honorable Donetta Ambrose
     Chief United States District Judge

     Alfonso Percy Pew
     BT-7263
     SCI Fayette
     P. O. Box 9999
     LaBelle, PA 15450-0999

     Scott A. Bradley
     Susan J. Forney
     Office of the Attorney General
     564 Forbes Avenue

5th Floor, Manor Complex
Pittsburgh, PA 15219

19