# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALFONSO PERCY PEW, | ) |
|          Plaintiff, | ) No. 03-1728 |
| vs. | ) Magistrate Judge Lisa Pupo Lenihan |
| JOANNE TORMA, DAVE ROBERTS, T'SHANNA KYLER, THOMAS A. FULCOMER, WILLIAM J. LOVE, JEFFERY A. BEARD, PHILIP L. JOHNSON, MECHLING, WILLIAM TERZA, VICUSI, LIEUTENANT 2 CULP, EVANS, WILLIAM A. STICKMAN, NIXON, JAMES META, CAROL A. DEWITT, COREY A. BISH, | ) ECF No. 219 |
|          Defendants. | ) |

## MEMORANDUM ORDER

Alfonso Percy Pew (hereinafter "Plaintiff") has filed a Motion for Permanent Injunction on Settlement Agreement and a Motion for Sanctions. (ECF No. 219). Plaintiff's motions will be denied, as this Court lacks subject matter jurisdiction and venue is improper in this District.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff is an inmate at the State Correctional Institution at Camp Hill ("S.C.I. Camp Hill"), located in Cumberland County, Pennsylvania, and Defendants are employees of the Pennsylvania Department of Corrections who have interacted with Plaintiff during his stay at various state correctional institutions.[1] In 2003, Plaintiff complained that the Defendants denied his requests for dietary accommodations based on his religious needs, and claimed that the

---

[1] Plaintiff served his sentence in numerous state correctional institutions before being transferred to S.C.I. Camp Hill. Plaintiff transferred between these Pennsylvania State Correctional Institutions from the beginning of his original lawsuit against the Defendants: S.C.I Rockview in Centre County; S.C.I. Smithfield in Huntingdon County; S.C.I. Frackville in Schuylkill County; and S.C.I. Mahoney in Schuylkill County.

1

Defendants violated the First Amendment of the Constitution and Religious Land Use and Institutionalized Persons Act of 2000, Pub. L. No. 106-274, 114 Stat. 803 (2000).

The case was set for trial on October 10, 2006. On September 29, 2006 pro bono counsel for Plaintiff filed a Joint Motion for Stay alleging that the parties were involved in settlement negotiations and an agreement was imminent. (ECF No. 141). The Court granted the stay and a conference was held on October 13, 2006. At the conference counsel reported that the case had been settled. (ECF No. 143). A Notice of Settlement was filed on December 26, 2006, (ECF No. 146) which included a Settlement Agreement and a Release of Claims signed by Plaintiff on November 17, 2006. Pursuant to the Release of Claims, Plaintiff agreed to discontinue his action against Defendants pursuant to a settlement agreement (hereinafter "Settlement Agreement"). (ECF No. 146-1). The Settlement Agreement also called for Defendants to supply and Plaintiff to accept a diet that would comply with Plaintiff's religious needs. (ECF No. 146-1). Finally, the Settlement Agreement contemplated, and the Court agreed, that the Court would retain jurisdiction for the purpose of enforcing its terms.

Shortly thereafter Plaintiff filed the first of many motions to enforce the settlement agreement, alleging that the diet he was being provided was not adequate and not in compliance with the terms of the agreement. (ECF No. 149).[2] The Court ordered two responses, including a requirement that the nutritional value of the meals be addressed by Defendant. (docket entries dated 3/24/10 and 5/19/10). After considering the evidence presented the first motion to enforce

---

[2] This initial motion included complaints that Plaintiff was not being provided with an adequate portion of breakfast cereal, not being given "healthy" jelly or peanut butter, not being provided with an adequate rotation of vegetables and fruits or healthy bean paste, etc. He also complained about the milk product- cheap soy milk powder, and averred that he was periodically deprived of portions of his meals.

was denied. (ECF No. 155). Plaintiff filed seven subsequent motions to enforce[3], all alleging similar violations. (*See* ECF Nos. 157, 162, 170, 177, 184, 188, 196).

On November 11, 2014, the Court referred Plaintiff to the Pro Se Prisoner Mediation Program[4] (ECF No. 199) and also, on December 11, 2014 held a hearing regarding the issues raised, with Plaintiff appearing via videoconference from his place of incarceration. (ECF No. 203). Also at this time, the Court secured representatives from the University of Pittsburgh School of Law to try to assist Plaintiff, observe the hearing and to later represent his interests. (ECF Nos. 199, 203 & 205).

Following much discussion, both in and out of the courtroom, a proposal was made that the case be re-opened and a second settlement agreement be agreed to that would not involve court oversight. (ECF No. 205).

Thereafter, Defendants filed a stipulation of dismissal under Federal Rule of Civil Procedure ("Rule") 41(a)(1)(A)(ii) (ECF No. 208), to which Plaintiff agreed pursuant to his signing of a new settlement agreement (hereinafter "Second Settlement Agreement") and Release of Claims dated February 10, 2015 (ECF No. 207-1). The Court subsequently entered an order declaring the original Settlement Agreement null and void, and dismissing Plaintiff's underlying case with prejudice. (ECF No. 209).

Although the Court did not retain enforcement powers over the second agreement, in an effort to ensure compliance, the Court continued to hold status conferences to ensure Plaintiff's receipt of meals that complied with his religious dietary restrictions.[5] ECF Nos. 213, 215. For

---

[3] Along with a few third circuit appeals.
[4] Through the Pro Se Prisoner Mediation Program, the United States District Court for the Western District of Pennsylvania offers representation and a neutral mediator at no cost to its incarcerated pro se litigants who have filed civil rights cases with the court.
[5] These conferences were held virtually via telephone or video. Before each conference, the Court ordered corrections officers, including the Defendants, to ensure Plaintiff's virtual presence at the scheduled conference times.

reasons unknown to the Court, Plaintiff refused to attend a conference that was to be held for his benefit on April 17, 2015 (ECF No. 216).[6] A dietary representative present at the conference informed the Court that Plaintiff had been receiving the diet established in the Second Settlement Agreement, and that he had not recently made any verbal or written complaints to dietary employees at S.C.I. Camp Hill. Despite the representative's statements reflecting Plaintiff's positive condition, Plaintiff continued to notice the Court about health issues (ECF No. 217) and the Defendants' failure to comply with the Second Settlement Agreement (ECF No. 218).

Plaintiff now seeks to enforce the Second Settlement Agreement through a Motion for Permanent Injunction and a Motion for Sanctions (ECF No. 219).

## II. **JURISDICTION**

While the Parties have not challenged the Court's subject matter jurisdiction to consider Plaintiff's present motions, the Court has an obligation to determine *sua sponte* whether subject matter jurisdiction is appropriate. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The present jurisdictional inquiry must begin with the nature of the documents signed by the parties, which purported to dismiss Plaintiff's underlying action against the Defendants pursuant to Rule 41(a)(1)(A)(ii) (ECF No. 207-1 & 208).

### A. **Dismissals Under Federal Rule of Civil Procedure 41**

Federal Rule of Civil Procedure 41(a)(1) provides that parties may choose to voluntarily dismiss an action:

> (A) *Without a Court Order*. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves as either an answer or motion for summary

---

[6] Scott Whalen, a representative attending the conference for S.C.I. Camp Hill, advised the Court that Mr. Pew refused to come to the phone for the conference call.

> judgment; or (ii) a stipulation of dismissal
> signed by all parties who have appeared.

Under Rule 41(a)(1)(A)(ii), parties can dismiss a complaint without a court order by filing a stipulation of dismissal signed by all the parties. The Third Circuit has held, and most other circuit courts agree, that a dismissal under Rule 41(a)(1)(A)(ii) is immediate and automatic, requiring no further judicial approval. *First Nat'l Bank of Toms River v. Marine City, Inc.*, 411 F.2d 674, 677 (3d Cir. 1969). *See also SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 463 (5th Cir. 2010) (holding that "any action by the district court after the filing of . . . a stipulation [under Rule 41(a)(1)(A)(ii)] can have no force or effect because the matter has already been dismissed . . . ."); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139 (2d Cir. 2004) ("Generally . . . a plaintiff's filing in the district court of a stipulation of dismissal signed by all parties pursuant to Rule 41(a)(1)(A)(ii) divests the court of its jurisdiction over a case, irrespective of whether the district court approves the stipulation."). A signed stipulation of dismissal under Rule 41(a)(1)(A)(ii) therefore technically automatically divests a court of subject matter jurisdiction, rendering any subsequent actions by the court regarding the matter ineffective. *See Anago Franchising, Inc. v. Shaz, L.L.C.*, 677 F.3d 1272, 1281 (11th Cir. 2012) (holding that a court's dismissal order issued after a settlement agreement is technically ineffective concerning the parties due to lack of subject matter jurisdiction).

### B. **Dismissals Under Rule 41(a)(1)(A)(ii) and Corresponding Dismissal Orders**

While Rule 41(a)(1)(A)(ii) automatically divests a court of subject matter jurisdiction, the Third Circuit has continuously examined later dismissal orders to find whether a district court has explicitly or implicitly agreed to retain subject matter jurisdiction over a corresponding

5

settlement agreement through supplemental jurisdiction.[7] *See, e.g.*, *Sander Sales Enterprises, Ltd. v. Saks, Inc.*, 245 F. App'x 108 (3d Cir. 2007); *Marwood v. Elizabeth Forward Sch. Dist.*, 93 F. App'x 333 (3d Cir. 2004); *Shaffer v. GTE North, Inc.*, 284 F.3d 500 (3d Cir. 2002); *Bowen v. Monus (In re Phar-Mor, Inc. Sec. Litig.)*, 172 F.3d 270 (3d Cir. 1999) (examining dismissal orders to determine whether a district court retained jurisdiction over certain settlement agreements). In doing so, the Third Circuit has repeatedly followed a unanimous Supreme Court decision, which held that a court could retain subject matter jurisdiction if it issued a dismissal order with explicit language to that effect or that specified terms of the corresponding settlement agreement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994). However, absent either of these components in a dismissal order, a court does not retain jurisdiction unless there is some independent basis for subject matter jurisdiction. *Id.* at 382.

The present parties signed a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii) (ECF Nos. 207 & 208) and this Court subsequently entered an order dismissing the case with prejudice (ECF No. 209).[8] Neither the stipulation nor the dismissal order contains any of the acknowledged components in order for the Court to appropriately retain subject matter jurisdiction over any actions related to enforcing the Second Settlement Agreement. Accordingly, while subject matter jurisdiction over Plaintiff's previous federal claims was

---

[7] Precedent case law uses the term "ancillary jurisdiction" to describe what is now widely referred to by courts as "supplemental jurisdiction." Congress codified much of the common law doctrine of ancillary jurisdiction as part of "supplemental jurisdiction" in 28 U.S.C. § 1367, which provides in part that "district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This opinion refers to the prior doctrine of "ancillary jurisdiction" with the updated and more general term of "supplemental jurisdiction."
[8] Voluntary dismissals under Rule 41(a) are presumed to be without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(B). However, the parties or the court can generally decide to dismiss the action with prejudice by including language to this effect. *See, e.g.*, *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987) ("Under Rule 41(a)(1)[A](ii)[,] where the stipulation does not state that the dismissal is with prejudice, it must be considered without prejudice.").

appropriate pursuant to 28 U.S.C. § 1331, the Court lacks subject matter jurisdiction to decide Plaintiff's present motions.

### 1. "Retaining Jurisdiction" Provision in the Dismissal Order

This Court's dismissal order does not contain any provision purporting to preserve subject matter jurisdiction over the parties' Second Settlement Agreement. In order for a court to have supplemental jurisdiction over a settlement agreement in this manner, there must be some explicit reference to a court's desire to retain subject matter jurisdiction over the matter in the dismissal order itself. *See Kokkonen*, 511 U.S. at 381 (stating that the court might have had subject matter jurisdiction to enforce the settlement agreement "if the parties' obligation to comply with the terms of the settlement agreement had been part of the order of dismissal . . . ." for example in a "provision [']retaining jurisdiction['] over the settlement agreement . . . .").

In *Sander Sales*, 245 F. App'x at 109, the court used the following language: "'without prejudice to the right, upon good cause shown within 45 days, or until August 17, 2004, to reopen the action if the settlement is not consummated.'" The dismissal order stated that the terms of the settlement were "'incorporated herein by reference and *the Court shall retain jurisdiction over the settlement agreement* to enforce its terms.'" *Id.* (emphasis added). The court held that this language properly preserved the court's jurisdiction over the settlement agreement. *Id.* at 111.

While the original Settlement Agreement invited Plaintiff to enforce it by filing a motion with the Court (ECF 146-1 at ¶ 4), the Court declared the Settlement Agreement null and void, which Plaintiff recognized by signing the Second Settlement Agreement (ECF No. 207-1 at ¶ 6). The Second Settlement Agreement contains no similar language. The Court's dismissal order (ECF No. 209) does not contain a similar provision to the "retaining jurisdiction" provision in

7

the dismissal order at issue in *Sander Sales*, 245 F. App'x at 109, which conferred supplemental jurisdiction over the parties' settlement agreement. The dismissal order here states that the "[p]arties have engaged in settlement discussions" and that they have "mutually agreed and entered into a settlement agreement covering all claims in the . . . [underlying] case" (ECF No. 209). The dismissal order briefly references the settlement agreement as "attached" in "Exhibit A" (ECF No. 209). The order thus does not contain a "retaining jurisdiction" provision sufficient to confer supplemental jurisdiction over Plaintiff's present motions seeking to enforce the Second Settlement Agreement.

### 2. Incorporation of Settlement Terms in a Court's Dismissal Order

The Court's dismissal order does not sufficiently incorporate the Second Settlement Agreement to retain jurisdiction under *Kokkonen*, 511 U.S. at 381-82. While the Third Circuit followed *Kokkonen* in concluding that a district court retains jurisdiction to the extent that it incorporates a settlement agreement into its dismissal order, it has consistently held that the order must itself explicitly incorporate the terms of the agreement in order to do so. *See Marwood*, 91 F. App'x at 335 (holding that a district court retained jurisdiction because the judge's dismissal order clearly incorporated the settlement agreement by explicitly setting out the terms of agreement). The Court of Appeals for this Circuit recognizes that even when a judge indicates approval and awareness of a settlement agreement, this does not necessarily mean that the terms of the settlement agreement are a part of that judge's order. *Kokkonen*, 511 U.S. at 381. Namely, "[a] dismissal order's mere reference to the fact of settlement does not incorporate the terms of the settlement agreement into the dismissal order." *Bowen*, 172 F.3d 270, 274 (3d Cir. 1999) (citing *Miener v. Missouri Dep't of Mental Health*, 62 F.3d 1126, 1128 (8th Cir. 1995)).

In *Kokkonen*, 511 U.S. at 381-82, a petitioner's suit was dismissed pursuant to Rule 41(a)(1)(A)(ii) because the parties arrived at a settlement agreement. The Supreme Court reversed the judgment of the Third Circuit that granted the respondent's motion to enforce the settlement agreement, explaining that the dismissal order did not sufficiently incorporate the terms of the settlement in order to allow the court to examine motions related to enforcing it. *Id.* The Third Circuit has since indicated that a phrase in the dismissal order reading "pursuant to the terms of Settlement" does not sufficiently incorporate the terms of a settlement agreement in order for a court to retain jurisdiction over it. *Bowen*, 172 F.3d at 774-75

This Court's dismissal order, like the dismissal order at issue in *Bowen*, 172 F.3d at 774-75, only briefly refers to the Second Settlement Agreement. The order simply references the Agreement to provide context behind the reasons for dismissal with prejudice (ECF No. 209). The dismissal order does not explicitly incorporate any terms of the agreement, nor does it indicate the binding nature of the terms of the Second Settlement Agreement on the parties. Thus, the dismissal order does not "sufficiently incorporate" the parties' Second Settlement Agreement under the standard articulated by both the Supreme Court and the Third Circuit. *See Kokkonen*, 511 U.S. at 381-82; *Bowen*, 172 F.3d 274-75.

### 3. Independent Basis for Jurisdiction

The Second Settlement Agreement is a contract to be enforced by state courts, and there is no independent basis for jurisdiction over its enforcement. Where there is no independent basis for jurisdiction over a settlement agreement, a federal court lacks supplemental jurisdiction over the settlement agreement, because such an agreement is "more than just a continuation or renewal of the dismissed suit…." *Kokkonen*, 511 U.S. at 378.

In *Kokkonen*, the Court held that the district court lacked subject matter jurisdiction when the respondent sought enforcement of a settlement agreement, as opposed to re-opening of his dismissed suit which appropriately held federal court jurisdiction. *Id.* Similarly here, Plaintiff wishes to enforce a settlement agreement, not to re-open the lawsuit that this Court has dismissed. The Court's reasoning in *Kokkonen*, 511 U.S. at 378, is instructive in this case. The Second Settlement Agreement between the Plaintiff and Defendants is a contract, and on its face does not establish an independent basis for jurisdiction.

As federal courts are courts of limited jurisdiction, the party seeking federal jurisdiction has the burden of establishing subject matter jurisdiction. *Id.* at 377 (citations omitted). Plaintiff's current Motions related to enforcing the Second Settlement Agreement are contractual in nature and belong in state court unless the Plaintiff can establish a separate basis for federal jurisdiction. Plaintiff has failed to present the Court with a separate basis for which it could exercise subject matter jurisdiction over the Second Settlement Agreement, so the Court cannot rule on his present motions.

### III. **VENUE**

The Western District of Pennsylvania is an improper venue for bringing the motions related to enforcing the Second Settlement Agreement. 28 U.S.C. § 1391(b) provides in relevant part that a civil action is properly brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

Plaintiff's residence is located in the Middle District of Pennsylvania for purposes of venue pursuant to 28 U.S.C. § 1391(b)(1).[9] While Plaintiff has been placed in multiple correctional institutions, the Second Settlement Agreement he now seeks to enforce arose out of events that occurred during Plaintiff's stays in multiple Pennsylvania State Correctional Institutions, all of which are located in the Middle District of Pennsylvania. *See supra* note 1. Plaintiff also filed each motion related to enforcing the original and second Settlement Agreements, including the present motions, during his stays in State Correctional Institutions in the Middle District of Pennsylvania. *See supra* note 1. Proper venue over the Plaintiff's case lies in the Middle District of Pennsylvania under both 28 U.S.C. §§ 1391(b)(1) and (2).

Thus, even if the Plaintiff could meet his burden of proving this Court's subject matter jurisdiction over his Motions, which this Court finds he does not, he must file these Motions in the United States District Court for the Middle District of Pennsylvania and cease filing motions related to the matter in this District.

## IV. CONCLUSION

For the reasons set forth above, this Court lacks subject matter jurisdiction over Plaintiff's Motions for Permanent Injunction to Enforce the Settlement Agreement and Sanctions (ECF No. 219), and venue in this District is improper. An Order consistent with this Opinion will be entered.

Dated: July 1, 2015                                      _____

Lisa Pupo Lenihan
U.S. Magistrate Judge

---

[9] At the time Plaintiff filed the present motions (ECF No. 219), his residence was at S.C.I. Camp Hill in Cumberland County, Pennsylvania, which is located in the Middle District of Pennsylvania.

cc: Alfonso Percy Pew
BT-7263
SCI-Camp Hill
2500 Lisburn Road
Camp Hill, PA 17001